IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-24

 No. 196A20

 Filed 19 March 2021

 IN THE MATTER OF: C.R.L., K.W.D.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 10

 February 2020 by Judge Roy Wijewickrama in District Court, Jackson County. This

 matter was calendared for argument in the Supreme Court on 11 February 2021 but

 determined on the record and briefs without oral argument pursuant to Rule 30(f) of

 the North Carolina Rules of Appellate Procedure.

 Jane R. Thompson for petitioner-appellee Jackson County Department of Social
 Services.

 Leah D’Aurora Richardson for appellee Guardian ad Litem.

 Peter Wood for respondent-appellant father.

 HUDSON, Justice.

¶1 Respondent-father appeals from the trial court’s order terminating his

 parental rights to his minor children C.R.L. (Craig) and K.W.D. (Kent). 1 He argues

 that the trial court committed reversible error by holding the termination hearing

 more than ninety days after the Jackson County Department of Social Services (DSS)

 filed its petitions to terminate his parental rights, in violation of N.C.G.S. § 7B-1109.

 1 Pseudonyms are used to protect the identities of the juveniles and for ease of reading.
 IN RE C.R.L., K.W.D.

 2021-NCSC-24

 Opinion of the Court

 After reviewing this claim, we conclude that the issue should have been addressed by

 the filing of a petition for writ of mandamus while the termination petitions were still

 pending; consequently, we affirm the termination order.

¶2 DSS became involved with this family after receiving a child protective services

 (CPS) report that the children’s mother tested positive for both methamphetamine

 and amphetamine in the weeks prior to and at the time of Kent’s birth. A DSS social

 worker investigating the CPS report learned that the parents previously had their

 parental rights to two older children terminated in New Jersey. The parents agreed

 to place Craig and Kent in a kinship placement with family friends. Kent suffered

 from multiple health problems as he went through withdrawal from the drugs to

 which he was exposed. On 28 May 2015, the family friends informed DSS that they

 would be unable to provide long-term kinship care for Craig and Kent.

¶3 On 8 June 2015, DSS filed juvenile petitions alleging that Craig was a

 neglected juvenile and Kent was an abused and neglected juvenile. In addition to the

 facts above, DSS alleged that both parents had recent positive drug screens, that they

 were living in a camper with the children’s maternal grandparents, and that they

 were currently unemployed. On 26 August 2015, the trial court entered a consent

 adjudication order concluding that both children were neglected juveniles. On 26

 October 2015, the trial court entered a disposition order which indicated that both

 parents had entered case plans with DSS and they were addressing the issues
 IN RE C.R.L., K.W.D.

 2021-NCSC-24

 Opinion of the Court

 identified therein. Both parents were awarded supervised visitation three hours per

 week.

¶4 On 18 January 2017, the trial court entered a permanency planning review

 hearing order in which it found that respondent-father’s whereabouts were no longer

 known to DSS and that DSS did not know how to reach him. The trial court

 suspended visitation with respondent-father until he provided two consecutive

 negative drug screens. Although respondent-father was located by the next

 permanency planning review hearing, his visitation remained suspended as the

 neglect case progressed because the trial court repeatedly concluded that continuing

 the suspension was in the children’s best interests.

¶5 DSS filed termination petitions on 22 March 2017, alleging that respondent-

 father’s parental rights to Craig and Kent were subject to termination on three

 grounds: that respondent-father had neglected the children; that he willfully left the

 children in foster care or a placement outside the home for more than twelve months

 without making reasonable progress toward correcting the conditions that led to their

 removal from the home; and that his parental rights with respect to another child

 had been terminated involuntarily and he lacked the ability or willingness to

 establish a safe home. See N.C.G.S. § 7B-1111(a)(1), (2), (9) (2019). After the petitions

 were filed, the trial court ordered DSS to notice the case for hearing in orders entered

 on 4 October 2017, 23 August 2018, 21 May 2019, and 25 July 2019. However, the
 IN RE C.R.L., K.W.D.

 2021-NCSC-24

 Opinion of the Court

 termination petitions were not heard until 9 and 10 December 2019, approximately

 thirty-three months after they were filed.

¶6 On 10 February 2020, the trial court entered an order terminating respondent-

 father’s parental rights.2 The order included a finding noting that the matter came

 on for hearing more than ninety days after the filing of the petitions and attempting

 to provide an explanation for the delay. The trial court concluded that all three

 grounds for termination alleged by DSS existed and that termination was in Craig’s

 and Kent’s best interests. Respondent-father appealed.

¶7 Respondent-father’s sole challenge to the termination order is that it was

 entered after a termination hearing that was conducted thirty-three months after

 DSS filed the termination petitions. He contends that this delay violated N.C.G.S.

 § 7B-1109, which sets out the following requirements for when a termination-of-

 parental-rights adjudicatory hearing shall occur:

 (a) The hearing on the termination of parental rights shall
 be conducted by the court sitting without a jury and shall
 be held in the district at such time and place as the chief
 district court judge shall designate, but no later than 90
 days from the filing of the petition or motion unless the
 judge pursuant to subsection (d) of this section orders that
 it be held at a later time. Reporting of the hearing shall be
 as provided by G.S. 7A-198 for reporting civil trials.

 ....

 2 The order also terminated the parental rights of Craig and Kent’s mother. She is not

 a party to this appeal.
 IN RE C.R.L., K.W.D.

 2021-NCSC-24

 Opinion of the Court

 (d) The court may for good cause shown continue the
 hearing for up to 90 days from the date of the initial
 petition in order to receive additional evidence including
 any reports or assessments that the court has requested, to
 allow the parties to conduct expeditious discovery, or to
 receive any other information needed in the best interests
 of the juvenile. Continuances that extend beyond 90 days
 after the initial petition shall be granted only in
 extraordinary circumstances when necessary for the
 proper administration of justice, and the court shall issue
 a written order stating the grounds for granting the
 continuance.

 N.C.G.S. § 7B-1109(a), (d). All of the parties agree that this statute was violated in

 this case, since the termination hearing was held well beyond ninety days after DSS

 filed the termination petitions and no continuances for extraordinary circumstances

 were requested or granted to permit this delay.3 But, as this Court has previously

 held, this statutory violation should have been remedied while it was occurring by

 the filing of a petition for writ of mandamus. See In re T.H.T., 362 N.C. 446, 454

 (2008) (“Mandamus is the proper remedy when the trial court fails to hold a hearing

 or enter an order as required by statute.”).

¶8 In In re T.H.T., this Court emphasized the importance of swiftly resolving child

 welfare cases, noting that “in almost all cases, delay is directly contrary to the best

 3 In the termination order, the trial court made a finding of fact which attempted to

 explain why the hearing occurred more than ninety days after the petitions were filed. This
 finding is immaterial because it cannot cure the violation, which requires the issuance of
 written orders continuing the hearing during the period of delay, and no such orders were
 entered in this matter. See N.C.G.S. § 7B-1109(d) (2019).
 IN RE C.R.L., K.W.D.

 2021-NCSC-24

 Opinion of the Court

 interests of children, which is the ‘polar star’ of the North Carolina Juvenile Code.”

 Id. at 450 (quoting In re Montgomery, 311 N.C. 101, 109 (1984)). The trial court in In

 re T.H.T. had failed to enter adjudication and disposition orders before the statutory

 deadlines, and this Court concluded that the respondent’s failure to file a petition for

 writ of mandamus during the delay was fatal to her appeal:

 We hold that in appeals from adjudicatory and
 dispositional orders in which the alleged error is the trial
 court’s failure to adhere to statutory deadlines, such error
 arises subsequent to the hearing and therefore does not
 affect the integrity of the hearing itself. Thus, a new
 hearing serves no legitimate purpose and does not remedy
 the error. Indeed, a new hearing only exacerbates the error
 and causes further delay. Instead, a party seeking recourse
 for such error should petition for writ of mandamus.

 Id. at 456. While in this case the error occurred prior to, rather than after, the hearing

 at issue, the reasoning underlying our holding in In re T.H.T. applies with equal force

 here. In both situations, “the availability of the remedy of mandamus ensures that

 the parties remain actively engaged in the district court process and do not ‘sit back’

 and rely upon an appeal to cure all wrongs.” Id. at 455. Moreover, unlike “a lengthy

 appeal” which “exacerbates the error and causes further delay[,]” “[m]andamus

 provides relatively swift enforcement of a party’s already established legal rights.”

 Id. at 455–56.

¶9 In this case, respondent-father failed to file a petition for writ of mandamus at

 any point during the thirty-three months between the filing of the termination
 IN RE C.R.L., K.W.D.

 2021-NCSC-24

 Opinion of the Court

 petitions and the termination hearing, and he offers no explanation for this failure.

 Instead, he sat on his rights and allowed the delay to continue without objection. At

 this juncture, granting relief based only on this violation of the statutory deadline

 would merely exacerbate the delay below. As we noted in In re T.H.T., “[w]hen the

 integrity of the trial court’s decision is not in question, a new hearing serves no

 purpose, but only ‘compounds the delay in obtaining permanence for the child.’ ” Id.

 at 453 (quoting In re J.N.S., 180 N.C. App. 573, 580 (2006)).

¶ 10 Respondent-father argues that the violation of N.C.G.S. § 7B-1109 in this case

 created a delay that was so egregious that it should be considered presumptively

 prejudicial. He further argues that the significant delay necessarily diminished his

 bond with his sons while at the same time strengthening their bond with their foster

 family, which in turn impacted the trial court’s determination of Craig’s and Kent’s

 best interests. In making these arguments, respondent-father fails to grapple with

 both his own inaction while the alleged prejudice was occurring and this Court’s

 decision in In re T.H.T.—a decision he does not acknowledge in his brief and thus

 makes no attempt to distinguish from this case. But respondent-father’s disregard of

 this Court’s precedent does not relieve us of our obligation to apply it: if respondent-

 father believed he was being harmed by the trial court’s delay in violation of N.C.G.S.

 § 7B-1109, the proper recourse was a petition for writ of mandamus. See In re T.H.T.,
 IN RE C.R.L., K.W.D.

 2021-NCSC-24

 Opinion of the Court

 362 N.C. at 456. It is now too late to obtain relief from the statutory violation, and a

 new hearing would be both futile and unfair. This argument is overruled.

¶ 11 “In cases such as the present one in which the trial court fails to adhere to

 statutory time lines, mandamus is an appropriate and more timely alternative than

 an appeal.” Id. at 455. Here, respondent-father did not file a petition for writ of

 mandamus while the termination petitions were pending, and therefore, he missed

 his opportunity to remedy the violation of N.C.G.S. § 7B-1109. Since respondent-

 father raises no other exceptions to the trial court’s order, we affirm the order

 terminating his parental rights.

 AFFIRMED.